PAULINE LAURENCE HABUDA v. TRUSTEES OF REX HOSPITAL, INC.
No. 6810SC394

(Filed 13 November 1968)

**1. Hospitals § 3— liability of charitable hospital to patient — immunity from suit**

A public hospital maintained primarily as a charitable institution may plead the common-law defense of charitable immunity to a cause of action arising in April 1964, the rule in *Rabon v. Hospital*, 269 N.C. 1, which abolishes the defense, being applicable to causes of action arising only after January 20, 1967.

**2. Charities and Foundations § 3— defense of charitable immunity abolished**

By virtue of G.S. 1-539.9, the common-law defense of charitable immunity does not constitute a valid defense to any action or cause of action arising subsequent to September 1, 1967.

**3. Hospitals § 3— negligence of hospital in selection of employees**

Prior to the decision in *Rabon v. Hospital*, 269 N.C. 1, a patient, paying or nonpaying, who was injured by the negligence of an employee of a charitable hospital could recover damages from the hospital only if the hospital was negligent in the selection or retention of the employee.

**4. Hospitals § 3— defense of charitable immunity — sufficiency of evidence**

In plaintiff's action against a charitable hospital for damages for personal injuries allegedly sustained when a student nurse prepared and gave to plaintiff a laxative containing hexachlorophene, a cleaning substance, rather than cascara as prescribed by plaintiff's doctor, the evidence is insufficient to show such negligence by the hospital in the selection and retention of the nurse as would destroy the hospital's immunity as a charitable institution when plaintiff's own evidence tends to show (1) that the nurse made passing grades in her subjects, including pharmacology, (2) that she worked diligently for self-improvement in her work, and (3) that she was assigned to work on plaintiff's floor under supervision of a registered nurse.

**5. Hospitals § 3— negligence in handling drugs**

In plaintiff's action against charitable hospital for damages for personal injuries allegedly sustained when a student nurse prepared and gave to plaintiff a laxative containing hexachlorophene, plaintiff fails to show that the hospital was negligent in failing to promulgate rules relating to storage and handling of drugs where (1) her own evidence shows the existence of a hospital rule requiring that drug labels be read three times, and (2) there is no evidence that the nurse failed to follow this rule in the instant case.

**6. Hospitals § 4— duty of nurses**

Nurses are required to use their best efforts to carry out the instructions of the attending physician and must do as directed unless an obvious injury would result.

**7. Hospitals § 3— negligence of charitable hospital — res ipsa doctrine**
Doctrine of *res ipsa loquitur* is inapplicable in situation where proof of charitable hospital's negligence would depend upon evidence that student nurse or some other agent of the hospital negligently mixed hexachlorophene with milk of magnesia, thereby causing plaintiff's injury, but common-law defense of charitable immunity would be applicable.

APPEAL by plaintiff from *Bone, E.J.*, Second May 1968 Regular Civil Session of WAKE Superior Court.

Plaintiff instituted this action to recover damages for personal injuries alleged to have been sustained on 13 April 1964 while plaintiff was a patient in the hospital operated by defendant. Plaintiff alleges administrative or managerial negligence on the part of the defendant, as well as negligence on the part of the agents of the defendant and in addition, negligence on the part of the defendant in failing to use care in the selection of its employees. The defendant denies all allegations of negligence and pleads as a defense to the action the common-law defense of charitable immunity, alleging that the defendant was created by act of the General Assembly and is operating in the public interest as a non-stock, non-profit, public, charitable and eleemosynary corporation.

Summons was issued herein on 25 May 1965. It was stipulated that all parties to this action were properly before the court. Trial was by jury during the second week of the Second May 1968 Regular Civil Session of the Superior Court of Wake County. Plaintiff and defendant offered evidence. At the close of all the evidence, the defendant's demurrer to the evidence was allowed, judgment of nonsuit was entered, and the plaintiff appealed to the Court of Appeals.

*Boyce, Lake & Burns by G. Eugene Boyce, and Nassif & Churchill by Ellis Nassif for plaintiff appellant.*

*Smith, Leach, Anderson & Dorsett by Henry A. Mitchell, Jr., for defendant appellee.*

MALLARD, C.J.
[1]    We are met at the beginning of this case with the question of whether the defendant's hospital was on 13 April 1964 a charitable institution and immune from liability for acts of negligence of its agents under the qualified charity immunity rule.

The Supreme Court of North Carolina in the case of *Rabon v. Hospital*, 269 N.C. 1, 152 S.E. 2d 485, held:

"Convinced that the rule of charitable immunity can no longer

properly be applied to hospitals, we hereby overrule *Williams v. Hospital*, 237 N.C. 387, 75 S.E. 2d 303, *Williams v. Hospital Asso.*, 234 N.C. 536, 67 S.E. 2d 662, and other cases of similar import. We hold that defendant Hospital is liable for the negligence of its employees acting within the scope and course of their employment just as is any other corporate employer. Recognizing, however, that hospitals have relied upon the old rule of immunity and that they may not have adequately protected themselves with liability insurance, we follow the procedure of Michigan, Illinois, Nebraska, and Wisconsin, as detailed in the decisions previously noted. The rule of liability herein announced applies only to this case and to those causes of action arising after January 20, 1967, the filing date of this opinion."

[2]  The 1967 General Assembly of North Carolina, recognizing that in some instances the common-law defense of charitable immunity prevailed in this state, abolished it and declared that it "shall not constitute a valid defense to any action or cause of action arising subsequent to September 1, 1967." G.S. 1-539.9.

The cause of action on which the plaintiff bases her claim is alleged to have arisen in April 1964. According to the case law and statutory law, the common-law defense of charitable immunity was available to the defendant herein on a cause of action arising in April 1964.

The Supreme Court of North Carolina has held in the case of *Martin v. Comrs. of Wake*, 208 N.C. 354, 180 S.E. 777 (1935), that:

"The trustees of Rex Hospital, as a corporation created by the General Assembly of North Carolina, own and maintain a hospital in the city of Raleigh, Wake County, North Carolina, for the medical treatment and hospital care of the indigent sick and afflicted poor of the city of Raleigh and of Wake County. This hospital is supported by donations of property and money by individuals and by the city of Raleigh and Wake County, and also by sums paid by patients who are able to pay for services rendered to them. It is a public hospital, and is maintained, primarily, as a charitable institution. See *Raleigh v. Trustees*, 206 N.C. 485, 174 S.E. 278." See also *Rex Hospital v. Comrs. of Wake*, 239 N.C. 312, 79 S.E. 2d 892 (1954).

[1]  The evidence in this case tends to show that the defendant's hospital in 1964 was being operated in substantially the same manner as it was in 1954. We are of the opinion that the defendant's hospital, as operated in April 1964, when plaintiff alleges she was

injured according to the evidence herein, was a public hospital maintained primarily as a charitable institution and comes within the rule of the common-law defense of charitable immunity.

This rule, with some but not all of the exceptions thereto, is set forth in 2 Strong, N. C. Index 2d, Charities & Foundations, § 3, as follows:

> "A person injured while enjoying the benefits provided by a charitable institution may not hold the institution liable for the negligence of its agents or employees if the institution has exercised reasonable care in their selection and retention. This rule applies even though the patron is a paying patient. . . . The fact that a charitable institution has procured insurance indemnifying it for liability does not enlarge its liability for negligence of its agents or employees. But a charitable hospital may be held liable for negligence in selecting an agent or employee."

[3]    This rule is also stated in *Rabon v. Hospital, supra.* Sharp, J., speaking of the law as it was at the time the cause of action arose in the present case, said:

> "Decided cases indicate that the present state of the law in North Carolina is as follows: A patient, paying or nonpaying, who is injured by the negligence of an employee of a charitable hospital may recover damages from it only if it was negligent in the selection or retention of such employee, *Williams v. Hospital, supra, Williams v. Hospital Asso., supra,* or perhaps if it provided defective equipment or supplies. *Payne v. Garvey,* 264 N.C. 593, 142 S.E. 2d 159. . . . Nor does the fact that a charitable institution has procured liability insurance affect its immunity. *Herndon v. Massey,* 217 N.C. 610, 8 S.E. 2d 914."

[4]    The evidence, taken in the light most favorable to the plaintiff, tended to show that the plaintiff was admitted to Rex Hospital by her family physician on 10 April 1964. Her physician's diagnosis was acute lumbosacral strain. She was placed in a room on the west wing of the fourth floor. At about nine o'clock P.M. on the evening of 13 April 1964, plaintiff requested that she be given a laxative composed of milk of magnesia and cascara which her doctor had prescribed. The laxative was prepared and given to her by Sylvia Scarborough (now Sylvia Scarborough Bynum, hereinafter referred to as student nurse) who was in her final year as a nursing student at the Rex Hospital School of Nursing. This laxative had a quantity of pHisoHex in it. pHisoHex is a cleaning substance similar to soap and contains, among other ingredients, three per cent hexachloro-

phene. Hexachlorophene is an anti-bacterial agent or a substance to decrease the number of bacteria. The laxative given to plaintiff foamed. One of the characteristics of pHisoHex is its tendency to foam when shaken. Milk of magnesia does not foam when shaken.

There was no written rule or regulation of Rex Hospital in April 1964 requiring that pHisoHex be maintained separate and apart from milk of magnesia, and there was no rule or regulation of defendant corporation applicable in April 1964 requiring external medicine to be kept separate from internal medicine. This bottle containing pHisoHex was at that time kept in the same area and immediately next to the bottle containing milk of magnesia. The student nurse was one of two persons assigned to the west wing of the fourth floor on the night in question. The other was a duly qualified registered nurse who was in overall charge on the west wing of the fourth floor. Shortly after taking the preparation, the plaintiff complained of a burning sensation, and approximately ten minutes later she became sick on her stomach. Subsequently, the plaintiff received treatment for gastritis and esophagitis, which could have been caused by the ingestion of pHisoHex. She was discharged from the hospital on 21 April 1964.

[3, 4]    The general rule as to a cause of action arising in 1964, relating to charitable hospitals not coming within the rule of respondeat superior, would seem to be that they may be held liable for injuries to patients under their care where such injury results from the hospital's negligent selection and retention of employees. *Hoke v. Glenn*, 167 N.C. 594, 83 S.E. 807. The plaintiff asserts that the defendant was negligent because "defendant's own rules approved by the trustees made no provision for using students, unsupervised in the capacity of qualified nurses" and furthermore, because defendant used a young girl who defendant's management knew was incompetent in the field of pharmacology, knew was an incompetent student having been on academic probation, and who was recently married and having personal difficulties which were exhibited in her poor performance. The basis for such assertion seems to be that this student nurse made her two lowest grades in pharmacology. However, it is to be noted that her two lowest grades were passing grades. It is difficult to comprehend how passing grades can be adjudged as a standard for incompetency. Plaintiff's exhibit "J" contains the following in relation to the student nurse in question: "She has demonstrated the ability to plan and implement nursing care to meet the needs of the patient as determined by his individuality. . . . Academically, Mrs. Bynum works diligently to attain a satisfactory score. . . ." We hold that the selection of a student

nurse who has passed her work, has demonstrated an aptitude for nursing, and who works diligently for self-improvement and is assigned to work under a registered nurse does not constitute such managerial or administrative negligence as is contemplated by the law in order to destroy the immunity of a charitable hospital. The plaintiff also asserts that the defendant violated its own rules by the use of a nursing student in the capacity as a fully qualified nurse. We note that plaintiff's exhibit "Q" refers to the use of student nurses within the hospital. The only possible assumption from the evidence here is that the defendant did contemplate the use of student nurses as was done in the present case. There is no evidence to show what the duties of a fully qualified nurse are, and we are therefore unable to determine if the student was actually used in such a capacity.

[4]    In our opinion, the evidence of the plaintiff fails to show any evidence of negligence on the part of the defendant in the selection or retention of the student nurse.

[5]    The plaintiff also asserts that the defendant was guilty of negligence in failing to promulgate rules relating to the separate storage of internal and external preparations. This contention assumes that the hospital was guilty of a lack of due care relative to the handling of drugs and other preparations. We do not agree with this contention; the plaintiff's evidence does not tend to show this. Plaintiff's exhibit "D" contains the following language relating to the administration of medicine:

"Read the label three times and check with card or order:

   a.   Before removing the bottle from the shelf.
   b.   Before pouring the drug.
   c.   Before replacing the bottle on the shelf."

[6]    There is no evidence that the student nurse failed to carry out these instructions in relation to the preparation given to the plaintiff. Nurses are required to use their best efforts to carry out the instructions of the attending physician and must do as directed unless an obvious injury would result. *Byrd v. Hospital*, 202 N.C. 337, 162 S.E. 738. The instructions of the physician were to give a milk of magnesia and cascara preparation to the plaintiff if she requested it. Here the student nurse was carrying out these orders, and in doing so, she complied with the directives of the hospital relating to the administration of medicine. The hospital had every reason to assume that its instructions would be carried out.

[7]    Plaintiff contends that the doctrine of *res ipsa loquitur* ap-

plies. If negligence in this case is proven, and we do not so decide, it would be proven by the evidence tending to show that pHisoHex was in some manner negligently mixed with the milk of magnesia by the student nurse or some other agent of the hospital, and this would not bring into play the doctrine of *res ipsa loquitur* but does bring into play the common-law defense of charitable immunity.

We are of the opinion that there was not sufficient evidence of managerial or administrative negligence or of a failure to use care by the defendant in the selection of its agents. However, we deem it proper to say in this case that were it not for the defense of the doctrine of charitable immunity, we are of the opinion that there would be sufficient evidence of negligence on the part of the agents of the hospital to take the case to the jury.

The judgment of nonsuit entered herein by the Superior Court is

Affirmed.

CAMPBELL and MORRIS, JJ., concur.