FRANCES BRIGHAM v. J. ROBINSON HICKS, THE NALLE CLINIC COMPANY, AND THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY

No. 7826SC993

(Filed 4 December 1979)

**1. Physicians, Surgeons and Allied Professions § 11— duty to inform patient of risks of medical procedure**

There may be an action for assault if a physician performs a surgical procedure on a person without properly informing that person of the risks involved so that an informed consent may be given, and if there is some danger peculiar to the procedure of which the patient is not aware, it is the

physician's duty to warn the patient of this danger; but if the likelihood of an adverse result is relatively slight, much must be left to the discretion of the physician or surgeon in determining what he should tell his patient as to adverse consequences.

**2. Physicians, Surgeons and Allied Professions § 17.1— failure to inform patient of risks—insufficiency of evidence**

The trial court properly granted summary judgment for defendant on plaintiff's claim that defendant assaulted her by performing a medical procedure on her without informed consent, since defendant did not tell plaintiff that one of the risks of the procedure was that she could become tense enough to cause her blood pressure to drop to a dangerous level, but such complications were not so likely or peculiar to the procedure that it was not within defendant's discretion to determine whether he should warn his patient of them.

**3. Physicians, Surgeons and Allied Professions § 20— doctor's negligence—patient's fear—proximate cause of injury**

The trial court in a malpractice action properly granted summary judgment for defendant where plaintiff failed to show that defendant's negligent method of performing a medical procedure proximately caused her injuries, but the uncontradicted evidence did tend to show that the cause of plaintiff's injury was her fear.

Judge MITCHELL concurs in the result.

APPEAL by plaintiff from *Hasty, Judge.* Order entered 13 July 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 28 June 1979.

This is an appeal by the plaintiff from a summary judgment in favor of all defendants. The plaintiff alleged two claims. First, she alleged that the defendant J. Robinson Hicks, an orthopedic surgeon, assaulted her by performing a procedure on her known as a Craig needle biopsy without obtaining her informed consent. She alleged as her second claim that Dr. Hicks and the other defendants, through their agents, were negligent in the performance of the biopsy procedure.

The plaintiff testified by deposition and in an affidavit that in October 1972, the defendant Hicks performed a Craig needle biopsy on her in the operating room of Charlotte Memorial Hospital. She stated he informed her it was a minor surgical procedure with no danger of complications. She stated further that after the procedure had commenced, Dr. Hicks told a technician operating an image intensifier used in the procedure that the image intensifier was malfunctioning, that he became angry and

reached across the plaintiff, pushed the machine, and shouted at the technician. Shortly thereafter she felt intense pain in her left leg which began jerking uncontrollably. She then heard Dr. Hicks say he had struck a nerve. She testified further that Dr. Hicks continued the procedure and shortly thereafter she heard a "squishy sound and gurgle," and Dr. Hicks stated he had probably hit a ligament. A few moments later blood started pouring from her mouth and she heard someone say her blood pressure was seventy over forty. She then lost consciousness. She testified further as to her injuries as a result of the biopsy procedure.

Dr. Hicks, in answer to interrogatories and by deposition, stated that the plaintiff was his patient in October 1972. He gave her some tests and felt that she might have cancer of the spine. In order to determine whether she had cancer, he felt a Craig needle biopsy should be performed. He testified that if she had cancer and was not treated for it, she would have lived for only a short time. He stated that he told her he thought the biopsy was necessary and that it would cause some discomfort. A Craig needle biopsy is a procedure by which instruments are inserted into the body of a patient and a sample is extracted from a vertebra. In this case, the instruments were inserted from a posterior position of the patient so that they would not perforate a major artery or organ. As a part of the procedure, a fluoroscope was used which provided an X-ray picture of the area in which the instruments were inserted so that the person performing the biopsy could properly place the instrument on the vertebra to draw a sample. An image intensifier was used with the fluoroscope in order to get a better image of the area in which the instruments were inserted. Dr. Hicks testified that the image intensifier was not functioning properly when it was first activated, and he sent for a technician who got it to function properly before Dr. Hicks began the procedure. After he had drawn one sample from a vertebra of the plaintiff and was drawing another, her blood pressure dropped. He had her anesthetized and when her blood pressure did not return to normal, he call Dr. Harry K. Daugherty, a thoracic and cardiovascular surgeon. They were both afraid a major artery or organ had been perforated and it was decided to perform an exploratory laparotomy to determine if this was the case. The exploratory laparotomy revealed that no major artery or organ had been perforated. There had been a

tense situation in the operating room and in his opinion, this, with the loss of blood, caused the patient to go into shock. There had not been a sufficient loss of blood by itself to cause the drop in her blood pressure.

Dr. Harry K. Daugherty testified that he performed an exploratory laparotomy on plaintiff following a Craig needle biopsy. He was called to the operating room and felt in her abdomen what appeared to be an abdominal mass. This was indirect evidence of a large amount of blood and it was decided to perform the exploratory operation. If there had been extensive bleeding, the plaintiff could have died. The abdomen was opened and it was found that no major artery or organ had been perforated. There was a small amount of blood diffused through the psoas muscle. In his opinion, one of the instruments used in the biopsy had severed a vein which caused a small amount of bleeding. The mass he had felt was probably her kidney which could move within the plaintiff.

Mrs. Brigham stated she did not know whether the problem with the image intensifier had been corrected at the time the first pain occurred. Mrs. Brigham also filed an affidavit of Janice E. Rusmisell in which she stated that she is an X-ray technician who was employed by the Charlotte Memorial Hospital on 17 October 1972, that she was called to the operating room to relieve the image intensifier operator, and that when she entered the operating room, Dr. Hicks was "sitting behind the patient, and that the needle was in the patient's back."

All defendants made motions for summary judgment based on answers to interrogatories, the depositions, and affidavits. The court allowed summary judgment for all defendants, and the plaintiff appealed.

*Paul L. Whitfield, and Rodney W. Seaford, for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon and Gray, by John G. Golding and Harvey L. Cosper, Jr., for defendant appellees.*

WEBB, Judge.

[1, 2] We discuss first the plaintiff's claim that defendant assaulted her by performing a Craig needle biopsy on her without

her informed consent. We note at the outset that G.S. 90-21.3 has no application in this case. It was ratified 12 May 1976 and does not apply to litigation pending at that time. The courts in this state had recognized that there may be an action for assault if a physician performs a surgical procedure on a person without properly informing that person of the risks involved so that an informed consent may be given. *See Watson v. Clutts*, 262 N.C. 153, 136 S.E. 2d 617 (1964); *Starnes v. Taylor*, 272 N.C. 386, 258 S.E. 2d 339 (1968), and *Butler v. Berkeley*, 25 N.C. App. 325, 213 S.E. 2d 571 (1975). The cases say that if there is some danger peculiar to the procedure of which the patient is not aware, it is the physician's duty to warn the patient of this danger. It has also been said that if the likelihood of an adverse result is relatively slight, much must be left to the discretion of the physician or surgeon in determining what he should tell his patient as to adverse consequences. Dr. Hicks, in this case, did not tell the plaintiff that one of the risks of the procedure was that she could become tense enough to cause her blood pressure to drop with the consequences that followed. Plaintiff contends failure to inform her of this makes it a jury question as to whether the procedure was performed with her informed consent. We hold that on the evidence of this case, the complications which resulted were not so likely or peculiar to the procedure that it was not within Dr. Hicks' discretion to determine whether he should warn his patient of them. The consequences of not performing the procedure could have been serious. We cannot hold the physician violated his duty to inform by not warning the patient of the possibility that she could become upset to a point which would cause her blood pressure to fall to a dangerous level.

The briefs raise a question as to whether this Court should adopt a rule requiring expert testimony to establish the extent of a physician's duty to inform patients of the risks of proposed treatment. *See* 52 A.L.R. 3d 1084 (1973) as to how other jurisdictions have dealt with this problem. In light of the ground upon which this opinion is based, we do not pass on this question.

The superior court properly granted summary judgment against plaintiff on her claim for assault.

[3]  Plaintiff's second claim is based on the negligence of Dr. Hicks in performing the Craig needle biopsy. To establish liability

Brigham v. Hicks

upon the surgeon or physician in malpractice cases, there must be proof of actionable negligence by the defendant which was the proximate cause of the plaintiff's injury. *Starnes v. Taylor, supra.* The plaintiff contends there was evidence of negligence in that Dr. Hicks started the procedure before he had a satisfactory image on the image intensifier. She contends this violated the standard of care as testified to by Dr. Hicks who said it was his responsibility not to proceed until he had a satisfactory image. There is a conflict as to whether Dr. Hicks began the procedure before the image was satisfactory. It can be inferred from the affidavit of Janice E. Rusmisell and in the deposition of the plaintiff that he did so. Dr. Hicks testified he did not. For purposes of this appeal we have to believe the plaintiff's evidence. Assuming that Dr. Hicks did start the procedure before he had the proper image and was negligent in doing so, the plaintiff must show this negligence was a proximate cause of her injury. We hold that on the evidence in this record, the plaintiff has not done so. Dr. Hicks and Dr. Daugherty testified without contradiction that the cause of the plaintiff's injury was not a severed vessel or organ, but the plaintiff's fear. On this evidence, a jury could not reasonably conclude that plaintiff's injury was proximately caused by the insertion of the needle before the image was clear. If this evidence had been presented to a jury, all defendants would have been entitled to directed verdicts in their favor. Defendants' motions for summary judgment were properly allowed. *Moore v. Fieldcrest Mills*, 296 N.C. 467, 251 S.E. 2d 419 (1979).

Affirmed.

Judge MARTIN (Robert M.) concurs.

Judge MITCHELL concurs in the result.